## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OPENPRINT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1076-GMS |
| | ) | |
| PANASONIC CORPORATION OF NORTH AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

**DEFENDANT PANASONIC CORPORATION OF NORTH AMERICA'S
OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

*Of Counsel:*
Joseph Casino, Esq.
Michael J. Kasdan Esq.
WIGGIN AND DANA LLC
437 Madison Avenue
New York, NY 10022
212-551-2842
jcasino@wiggin.com
mkasdan@wiggin.com

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendant Panasonic Corporation of
North America*

Dated: October 12, 2017

# **TABLE OF CONTENTS**

**Page**

TABLE OF ABBREVIATIONS ................................................................................. iv

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

    A.    The Fax-to-Email Patents ................................................................. 2

    B.    The Address Book Patents ................................................................ 4

ARGUMENT ...................................................................................................... 6

I.    The Fax-to-Email Patents Are Ineligible Under 35 U.S.C. § 101 ....................... 7

    A.    Step One of Alice: The Fax-to-email Patents Are Directed to an Abstract Idea ................................................................................................. 7

        1.    The Fax-to-Email Patents Are Directed to Delivering a Fax to an E-mail Address ........................................................................ 7

        2.    Delivering a Fax to an E-mail Address Is an Abstract Idea ..................... 12

    B.    Step Two of Alice: The Fax-to-Email Patents Lack an Inventive Concept .......... 13

II.    The Address Book Patents Are Ineligible Under 35 U.S.C. § 101 ..................... 16

    A.    Step One of Alice: The Address Book Patents Are Directed to an Abstract Idea ................................................................................................. 16

        1.    The Claims Are Directed to An Address Book ....................................... 16

        2.    The Idea of an Address Book is an Abstract Idea ................................... 17

    B.    Step Two of Alice: The Address Book Patents Lack an Inventive Concept ........ 19

III.    Conclusion ...................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A Pty Ltd. v. Google, Inc.*, 149 F. Supp. 3d 754 (W.D. Tex. 2016)................................. 18

*Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016).................. 10, 11, 16, 19

*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)......................................... passim

*Blackbird Tech LLC v. Advanced Discovery Inc.*, No. 16-413-GMS, 2017 U.S. Dist. LEXIS
  98045 (D. Del. June 26, 2017)................................................................... 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343
  (Fed. Cir. 2014)....................................................................... 3, 13, 14, 19

*DealerTrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ....................................... 10

*EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969 (Fed. Cir. 2017) .................. 13, 14

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ........................... 14

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)............................... 12, 18

*FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089 (Fed. Cir. 2016).............................. 15

*In re Roslin Institute (Edinburgh)*, 750 F.3d 1333 (Fed. Cir. 2014)................................ 6

*In re Salwan*, 681 Fed. Appx. 938 (2017)........................................................ 14

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) .......... 12

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, C.A. No. 13-1632-LPS, 2017 U.S. Dist.
  LEXIS 134551 (D. Del. Aug. 23, 2017)................................................... 13

*Mortgage Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314 (Fed. Cir. 2016) ................ 12

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, No. 14-612-RGA,
  2015 U.S. Dist. LEXIS 116647 (D. Del. Sep. 2, 2015).................................... 11, 13

*Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660 (D. Del. 2015) .................... 13, 17

*Prism Techs. LLC v. T-Mobile USA, Inc.*, No. 2016-2031, 2017 U.S. App.
  LEXIS 11163 (Fed. Cir. June 23, 2017)................................................. 14, 19

*Return Mail, Inc. v. United States Postal Serv.*, No. 2016-1502, 2017 U.S. App. LEXIS
  16364 (Fed. Cir. Aug. 28, 2017)........................................................ 20

*TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607 (Fed. Cir. 2016) ............................ 7, 9, 14

*TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068
  (D. Del. Apr. 28, 2015) ........................................................................................................ 13

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ........................................ 6, 15, 19

*Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS
  132000 (D. Del. Sep. 30, 2015) .............................................................................................. 18

*VideoShare, LLC v. Google, Inc.*, No. 13-cv-990 (GMS), 2016 U.S. Dist. LEXIS
  100860 (D. Del. Aug. 2, 2016) ................................................................................... 10, 12, 15

**Statutes**

35 U.S.C. § 101 ................................................................................................................. 1, 7, 16

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 4

## **TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| PNA | Panasonic Corporation of North America |
| Plaintiff | OpenPrint LLC |
| The complaint | D.I. 1 |
| The '345 patent | U.S. Patent No. 6,023,345 |
| The '906 patent | U.S. Patent No. 7,446,906 |
| The '601 patent | U.S. Patent No. 8,547,601 |
| The '313 patent | U.S. Patent No. 6,381,313 |
| The '974 patent | U.S. Patent No. 6,639,974 |
| The '888 patent | U.S. Patent No. 8,941,888 |

**INTRODUCTION**

OpenPrint LLC filed this action for infringement of six patents: four relating to the

concept of sending faxes to e-mail; the other two relating to using an address book on a fax

machine.  Each is ineligible under 35 U.S.C. § 101, and there is no need to consume the public's

resources by setting a schedule or proceeding toward trial.  Defendant Panasonic Corporation of

North America ("PNA") moves[1] to dismiss under Fed. R. Civ. P. 12(b)(6) for the following

reasons:

1.      The asserted claims of the fax-to-email patents are ineligible under § 101 because

they are directed to the abstract idea of moving a document from one electronic format (facsimile

format) to another (e-mail format) and because the claims lack an inventive concept sufficient to

ensure that the claims are anything more than a patent upon the ineligible concept itself.  The

limitations in the claims otherwise consist of conventional computer hardware and functions.

2.      The asserted claims of the address book patents are ineligible under § 101 because

they are directed to the abstract idea of an address book, and because they lack an inventive

concept.  The asserted claims also preempt all implementations of an address book in the

technological environment of fax machines that send to network addresses.  The limitations in

the claims consist of a simple implementation of the abstract idea on generic computer hardware.

**STATEMENT OF FACTS**

OpenPrint asserts infringement of certain claims of U.S. Patent Nos. 6,023,345,

7,446,906, 8,547,601, 6,381,313, 6,639,974, and 8,941,888.  (D.I. 1 at ¶¶ 6-11).

| Group | Subject Matter | Representative Claim: | Patents: | Asserted Claims: |
|---|---|---|---|---|
| 1: Fax-to-email | Sending faxes to | '345 patent claim 13 | '345 patent | 13 |

[1] PNA notes that this motion is substantively the same as the motion to dismiss filed in *OpenPrint LLC v. Oki Data* America, Inc., Case No. 17-cv-01075.

| patents | e-mail | | '906 patent | 1, 2, 3, 10, 12, 13, 14, 15, and 16 |
|---|---|---|---|---|
| | | | '601 patent | 1, 6, 8, and 9 |
| | | | '888 patent | 1, 2, 3, 4, 5, 6, 7, 8, and 9 |
| 2: Address book patents | Address book on a fax machine | '313 patent claim 1 | '313 patent | 13 |
| | | | '974 patent | 1, 2, 3, 4, and 5 |

### A.      The Fax-to-Email Patents

The first group of related patents will be referred to as the fax-to-email patents.  The shared specification[2] of these patents describes a purported invention, implemented in software on a fax-capable device or computer, meant to allow a fax machine to send a fax to an e-mail address.  ('345 patent at Abstract, 1:64-2:8, 2:34-37).

The specification discloses software that runs on "any fax-capable device" that allows the device to interface with a server in order to send faxes to e-mail addresses.  Fax-capable devices include various generic and broadly defined electronics such as "conventional facsimile machines, multi-function machines which can operate as fax machines, or image scanners which can operate as fax sending devices."  ('345 patent, 5:13-17).  The specification discloses a software modification of those devices[3] that permits them to send faxes to e-mail addresses using a server.  (*Id.* at Abstract, 2:43-45, 20:24-67 ("software logic 364")).  The software has two modes: a traditional facsimile mode and a fax-to-email mode.  (*Id.* at 20:59-67).  In the second mode, the user enters an e-mail address through the keypad on the device and presses the "SEND" button; the device then transmits the document to the server which e-mails the data to the destination address.  (*See, e.g.*, *id.* at 11B, 11C, 18:48-56, 19:25-40, 21:39-44).

---

[2]    The specifications of the fax-to-email patents are largely identical except for certain material missing from two sections of the '345 patent specification.  (*Compare* '345 patent at 20:13-23, 21:52-60 *with* '906 patent at 20:3-63, 22:23-23:8).  This material has no relevance to this motion.

[3]    The specification first discloses the invention as a "fax interface device," a separate unit that sits beside a fax machine.  However, the specification also discloses and claims implementing the device in software on a fax-capable device.  (*See, e.g.*, *id.* at Abstract, 2:43-45, 20:24-67).

Claim 13 of the '345 patent is representative of the asserted claims of the fax-to-email patents.  It claims a "facsimile device" that sends "facsimile information" to an e-mail address:

> 13. A communication system for communicating, with the assistance of a public communication network ("PN") and a global computer communications network, information found originally as an image on paper, said system comprising:
>> a server in communication with the PN and in communication with the computer network;
>> a facsimile device for generating facsimile information from information found originally as an image on paper, said facsimile device communicating with PN;
>> an interface device responsive to signals received at said interface device to facilitate communications between said facsimile device and said server and to facilitate delivery of facsimile information from said facsimile device to an e-mail address associated with the computer network.

(D.I. 1, Ex. A ("'345 patent") at 24:3-18).[4]

The other asserted independent claims of the related patents contain corresponding limitations as well as additional generic limitations.  The '906 patent's asserted independent claims include corresponding limitations relating to a facsimile device and a "server."  (D.I. 1, Ex. B ("'906 patent") at claims 1, 12).  Those claims also add limitations that the "interface device" is used to receive a destination e-mail address from the user, that a user may request a report upon sending, and/or including instructions to open the attachment.  (*Id.*)  The two asserted independent claims of the '601 patent include corresponding limitations, but add that the e-mail address is received in "alphanumeric" form, and that the facsimile information is "attach[ed]" to the e-mail.  (D.I. 1, Ex. C ("'601 patent") at claims 1, 6).  The sole asserted independent claim of the '888 patent is similar as well but refers to the server as a "facsimile-to-email gateway" and states that it has two "modes"—one where it sends the facsimile information

---

[4] Courts may rely upon representative claims under § 101 if, as here, they are "substantially similar and linked to the same abstract idea."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (quotation marks omitted).

to e-mail and one where it sends it to a fax machine.  (D.I. 1, Ex. F ("'888 patent") at claim 1).

The asserted dependent claims include generic elements such as the steps of inserting paper into the device and entering the e-mail address, and specifying the type of network the facsimile device is connected to.  These dependent claims are summarized in the following table:

| Dependent Claim(s) | Category |
|---|---|
| '906 patent claim 2 | Inserting paper into the device |
| '906 patent claim 3 | Entering destination e-mail address |
| '906 patent claims 13, 14 '888 patent claims 2, 3, 4, 5, 6 | Types of network used |
| '906 patent claim 15 | Interface device connection restrictions |
| '906 patent claim 16 '601 patent claim 8 '888 patent claims 7, 8 | Alphanumeric keypad on interface device, or that the system is a multi-function peripheral |
| '601 patent claim 9 '888 patent claim 9 | E-mail attachment is in TIFF format |
| '906 patent claim 10 | Providing a confirmation receipt to user |

In its complaint, plaintiff asserts the fax-to-email patents against "multi-function peripherals."  (*See, e.g.*, D.I. 1 at ¶ 58).  These are devices that can act as "a printer, scanner, copier, [and a] fax machine," and are alleged to contain scan-to-email functionality.  (*See, e.g.*, *id.*).  As the complaint implicitly recognizes, the accused devices do not use an external server like the embodiments disclosed in the '345 patent;[5] rather, plaintiff asserts that they instead use "an internal server."  (*See, e.g.*, *id.* at ¶¶ 15, 33).[6]  Thus, plaintiff construes the "server" of the asserted claim as software functionality implemented on the computers within the MFPs.

B.    The Address Book Patents

The second group of related patents will be referred to as the address book patents.

_____

[5]    In every embodiment disclosed in the '345 patent, including the integrated embodiment, an external server is used to convert the fax data to an e-mail.  (*See* '345 patent at 21:34-39).

[6]    PNA adopts plaintiff's apparent constructions for the purposes of this Fed. R. Civ. P. 12(b)(6) motion only.

These include the '313 and '974 patents, which share specifications.  As asserted by plaintiff, both patents describe an address book for a fax machine where the user enters the phone number for the recipient, and then the fax machine finds the number in the address book and retrieves the recipient's e-mail address so that the fax can be directed there.  (D.I. 1 at ¶¶ 40, 44, 46-47).  The specification discloses a personal computer that, when a user sends a fax to a phone number, looks up the corresponding e-mail address or network address from a table (*i.e.*, an address book) and forwards the fax to that e-mail address.  ('313 patent at 1:62-2:10, 4:51-5:10).

The claims of the address book patents focus on the address book portion of the alleged invention.  Claim 13 of the '313 patent is representative of the claims of the address book patents.  It claims the idea of receiving any "identification code" for a recipient including, *e.g.*, a name or phone number and using that code to find a "network address" for that recipient.  Plaintiff asserts that this "network address" may be an e-mail address.[7]  (D.I. 1 at ¶¶ 40, 44).  When the system receives the "code," *e.g.*, the contact's name, it directs the fax to their address:

> 13. A system for directing a fax to a desired recipient identified by an identification code over a network at a network address that is not the identification code, comprising:
>     a. a storage system for storing a plurality of records in a table, each record containing:
>         (1) an identification code identifying a recipient that can receive a fax at a network address that is not the identification code; and
>         (2) the network address;
>     b. a processing system in communication with said storage system configured to:
>         (1) receive the an [sic] identification code;
>         (2) determine whether said storage system contains a matching record having the an [sic] identification code; and
>         (3) direct the fax to the network address in the matching record if said

---

[7]   For the purposes of this motion, PNA adopts solely the constructions set forth in the complaint, including that a "network address" includes an "e-mail address."  (D.I. 1 at ¶¶ 40, 44). If the case is not dismissed, PNA may argue during claim construction for other constructions including, for example, a construction of "network address" that excludes e-mail addresses.

storage system contains a matching record.

(D.I. 1 at ¶ 40; '313 patent at 7:5-8:10).

The other three asserted independent claims are nearly identical.  Claims 1 and 3 of the '974 patent require that the systems are "co-located with the sender."  ('313 patent, claims 1 and 3).  Claim 4 instead requires that the system be "under the management of the sender."  (*Id.* at claim 4).  Claims 1 and 4 require an "Internet address" rather than a "network address," although plaintiff asserts that an "e-mail address" meets both requirements.  (*Id.*, claims 1 and 4; D.I. 1 at ¶¶ 40, 44, 46-47).  The independent claims otherwise have nearly identical limitations.  The two asserted dependent claims add only that the identification code (*i.e.*, name) is "manually entered" and that the claim 4 system is "co-located with the sender" like claims 1 and 3.

Plaintiff asserts each of the claims against the same MFP products.  (D.I. 1 at ¶¶ 39-50).  Plaintiff alleges that the products infringe because they each contain an "address book" with an "entry" that has an "e-mail address" where the user selects the entry and then "the fax is sent to the email address associated with the address book entry."  ('313 patent, claims 1 and 4; D.I. 1 at ¶¶ 40, 44, 46-47.).  Plaintiff asserts that the address book patents are broad enough to encompass the selection of an item in an address book on the screen instead of the entry of a "code."  (*Id.*).

## ARGUMENT

For more than a century, the law has barred patents on abstract ideas.  *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). As this Court has recognized, it is appropriate to address § 101 arguments at the Rule 12(b)(6) stage.  *See Blackbird Tech LLC v. Advanced Discovery Inc.*, No. 16-413-GMS, 2017 U.S. Dist. LEXIS 98045, at *6-9 (D. Del. June 26, 2017).  Indeed, it has become common for district courts to resolve the issue of patent eligibility under § 101 by way of a motion to dismiss.  *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713-17 (Fed. Cir. 2014); *In re Roslin Institute (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir.

2014) ("Section 101 patent eligibility is a question of law.").

The Supreme Court's decision in *Alice* makes it crystal clear that plaintiff has no claim for relief here because the asserted patents are unpatentable as a matter of law.

**I.    The Fax-to-Email Patents Are Ineligible Under 35 U.S.C. § 101**

**A.    Step One of Alice: The Fax-to-email Patents Are Directed to an Abstract Idea**

Step one of *Alice* analysis asks "whether the claims . . . are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Here, the fax-to-email patents are directed to the idea of moving a document from one electronic format (facsimile format) to another (e-mail format).

**1.    The Fax-to-Email Patents Are Directed to Delivering a Fax to an E-mail Address**

Representative claim 13 of the '345 patent consists primarily of limitations that represent generic, commodity hardware, described in functional terms. The disclosure of generic and conventional technology, such as computers, servers, and telephones, described in functional terms, indicates that a claim is not "directed to a specific improvement to computer functionality" and is instead directed to an abstract idea. *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 611-13 (Fed. Cir. 2016).

Here, the representative claim includes a "server," a "facsimile device," and an "interface device." ('345 patent, claim 13). The server is a conventional computer "in communication with the [phone network] and in communication with the computer network" that communicates with the "facsimile device." ('345 patent at claim 13). The specification states that the server is a standard computer using commercially available hardware, examples of which are given, programmed to perform certain steps involving standard prior-art methods of receiving faxes and standard prior-art image formats. ('345 patent, Fig. 2; 5:52-7:28 (server may include a "model VFX40ESC voice/fax/modem communication interface available from Dialogic," a "model

SMC9332DST [network interface] available from Standard Microsystems Corporation . . . ,
which is compatible with the 100Base T Ethernet standard," and "converts the fax image data to
image data . . . formatted in any one of several industry-standard formats for images"); *see also
id.*, 7:53-61 (describing the components of figure 3, which mirror those of the fax server in figure
2, as "being configured and inter-operating in a manner that will be clearly understood by one
skilled in the art")).  It receives the data using the "well-known" "G3 protocol." (*Id.*, 13:10-18).
As asserted by plaintiff,[8] the claim does not even set forth what function the server is to perform.

The "facsimile device" is defined in purely functional terms.  Like any fax machine, it
"generat[es] facsimile information" from "information found originally as an image on paper."
(*Id.* at claim 1; *see also id.*, 4:26-28 (describing this element as "a standard fax device 106 (for
example, conventional stand alone fax machine or multifunction machine with fax
capabilities)").  According to the specification, a "fax device" may include "any fax-capable
device, including for example and not limitation, conventional facsimile machines,
multi-function machines which can operate as fax machines, or image scanners which can
operate as fax sending devices." (*Id.*, 5:14-17).

Finally, the "interface device," as asserted, is likewise generic hardware defined in
functional terms.  It includes any device "responsive to signals received at said interface device
to facilitate communications between said facsimile device and said server and to facilitate
delivery of facsimile information from said facsimile device to an e-mail address." (*Id.*, claim
13).  Plaintiff asserts that the interface device includes any "touch screen or key interface" that

---

[8]   The patent describes the server as separate from the fax machine and as "compris[ing] a
plurality of fax/data communication interfaces" which connect to the phone network.  (*Id.* at
5:54-55).  Plaintiff asserts, however, that the claims are infringed by an MFP on its own even if it
lacks a server as set forth in the patent, and instead uses "an internal server."  (D.I. 1 at ¶ 15, 33).
As set forth above, PNA adopts plaintiff's constructions for the purposes of this motion only.

can be used to input "the destination email address to send the internet fax to."  (D.I. 1 at ¶ 15).

As the patent recognizes, such keypads and displays were known in the art.  (*See, e.g.,* '345

patent at 20:47-51 (describing that the integrated embodiment uses the existing keypad and

display on the conventional fax machine); *see also id.*, 10:21-23 (describing an embodiment

"comprising a standard telephony-styled DTMF keypad and custom control buttons.")).

Setting aside the conventional hardware set forth in functional terms, the only remaining

limitation is that it is used to "facilitate communications between said facsimile device and said

server and to facilitate delivery of facsimile information from said facsimile device to an e-mail

address."  ('345 patent at claim 13).  Under plaintiff's apparent reading, however, this involves

nothing more than the delivering a fax to the address that was entered.  D.I. 1 at ¶ 15.  Thus,

stripping away the generic hardware limitations, the claim is directed to delivering a fax to an e-

mail address.  *See Alice*, 134 S. Ct. at 2357 (stating that "computer implementation d[oes] not

supply the necessary inventive concept"); *TLI*, 823 F.3d at 610-13 (holding that claims involving

"administering digital images" using a "telephone unit" and "server" were nonetheless directed

to the idea of "classifying and storing digital images in an organized manner").

The representative claim is not limited to any specific solution to a prior art problem.

The prior art problem identified by the specification is a desire to "mingle" fax and email

systems, *i.e.*, by delivering fax messages by e-mail.  ('345 patent at 1:22-60).  The specification

identifies previous efforts that converted a fax message to an e-mail, but notes that the message

was ultimately converted back and delivered as a fax.  (*Id.* at 1:30-37).  The specification

discloses a system that does the same except stops halfway: it converts a message to an e-mail

and delivers it that way.  But the representative claim, as asserted by plaintiff, is not limited even

to that system.  Instead, it recites only generic computer elements and "facilitat[ing] delivery of

9

facsimile information from said facsimile device to an e-mail address."  (*Id.* at claim 13).

The generic computer elements recited in the claim are not solutions to the problem, either.  Instead, they are necessary characteristics of *any* computer that performs the abstract idea of sending a fax message to an e-mail address.  As such, the claims are directed simply to any computer that automates the process of converting a fax message to an e-mail.  *See VideoShare, LLC v. Google, Inc.*, C.A. No. 13-cv-990 (GMS), 2016 U.S. Dist. LEXIS 100860, at *19 (D. Del. Aug. 2, 2016) (holding ineligible patent claims regarding "automat[ing] a sequence of known steps using conventional technology so that a human is not burdened with various manual steps").  This is nothing more than converting data from one format to another, and the purported limitation to the field of use, at most, limits the abstract idea "to a particular technological environment," which is insufficient to save the claim.  *Alice*, 134 S. Ct. at 2358.

Claim 13 says nothing of *how* the conversion is completed beyond the use of generic computer hardware and instead, it claims the ultimate result of converting a facsimile message to an e-mail.  *See Alice*, 134 S. Ct. at 2358 ("Stating an abstract idea while adding the words apply it' is not enough for patent eligibility." (internal quotation marks and citation omitted)); *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (claim directed to an abstract idea where "[t]here is nothing in claim 1 that is directed to *how* to implement [the idea]. Rather, the claim is drawn to the idea itself"); *VideoShare*, 2016 U.S. Dist. LEXIS 100860 at *21-22 (claims directed to an abstract idea where they "d[id] not specify *how* [the claimed] tasks are completed, but rather merely specifies *what* is to happen," and that "conventional computers are all that is needed to carry out the various steps, without any improved functionality resulting from the arrangement of such conventional computers or their functions.").  And even if the specification had disclosed a specific solution, no such solution is required by the claim.  *See*

*DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) (affirming ineligibility determination where "the claims here recite only that the method is 'computer aided' without specifying any level of involvement or detail.  The fact that certain algorithms are disclosed in the specification does not change the outcome.").  Like the claims rejected in *Affinity Labs*, the claim is "untethered to any specific or concrete way of implementing it."  838 F.3d at 1258.

The other asserted claims of the fax-to-email patents are directed to the same abstract concept.  As set forth above, the other independent claims add further limitations but these are nothing more than additional functionally-defined steps or "attempt[s] to limit the use of the idea to a particular technological environment."  *Alice*, 134 S. Ct. at 2358 (internal quotations and alterations omitted).  Independent claims 1 and 12 of the '906 patent rephrase the same elements in terms of steps performed by the generic "server," and adding that a report is generatedor that instructions are included.  The steps performed by the server are nothing more than ordinary actions set forth in functional terms such as "receiving," "converting," "composing" and "transmitting."  And plaintiff asserts that the "report" elements are met by the typical fax machine functionality of printing a confirmation when a fax is sent.  (D.I. 1 at ¶¶ 21, 25, Ex. G at Fig. 5 (citing the "Fax Functionality" of providing a "Journal report")).  Claims with similar functionality for issuing a report after the conversion of a message have been found to be directed to an abstract idea.  *See Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, C.A. No. 14-612-RGA, 2015 U.S. Dist. LEXIS 116647, at *3, *9-10 (D. Del. Sep. 2, 2015) (finding that claims regarding converting messages are directed to the abstract idea of "translation," where the claims also required notification to the sender upon of receipt of the message).

Similarly, asserted claims 1 and 6 of the '601 patent merely rephrase the elements, adding field-of-use restrictions such as the idea that the fax data is in an image attached to the e-mail.

Claim 1 of the '888 patent likewise rephrases the same basic elements.  As asserted by plaintiff, it adds only that the fax machine must also be able to send regular faxes as well.  (D.I. 1 at ¶ 52).

## 2.   Delivering a Fax to an E-mail Address Is an Abstract Idea

The idea of delivering a fax to an e-mail address is an abstract idea under *Alice*.  It represents one form of the well-known business practice of moving a fax to an e-mail.  The patent acknowledges that the patentee did not invent the idea of converting a fax to an e-mail generally.  ('345 patent at 1:30-37).  A person can manually convert a fax to an e-mail simply by scanning it and e-mailing it.  The claim only adds that it is done by the generic computer on the fax machine, rather than by the user.  *See, e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (holding that a description of generic computing components with an instruction to "apply [the abstract concept] on a computer" does not confer eligibility).  The claim's requirements—as construed by plaintiff—encompass a conventional server integrated into a conventional fax machine with a conventional interface to input the e-mail address, which are merely the basic and well-known equipment required to perform the abstract idea.  *Intellectual Ventures*, 792 F.3d at 1370 ("[T]he interactive interface limitation is a generic computer element."); *Mortgage Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (generic computer elements such as "interface" do not satisfy the inventive concept requirement).  This is not a "specific asserted improvement in computer capabilities;" instead, it is "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).  In other words, "the claims are not directed to an improvement in computer functionality, and the physical components of the claim merely provide a generic environment for carrying out the abstract idea."  *VideoShare*, 2016 U.S. Dist. LEXIS 100860, at *16.

The abstract idea of moving a document from one electronic format (facsimile format) to

another (e-mail format) is directly analogous to ideas that the Federal Circuit has found to be
abstract.  *See*, *e.g.*, *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969 (Fed. Cir.
2017) (holding that claims on a system to "convert at least a second portion of the message from
the first format to a second format" were directed to the abstract idea of "receiving,
authenticating, and publishing data"); *Content Extraction*, 776 F.3d 1343 (claims involving
receiving and recognizing data *from a fax* ineligible).  District courts have done the same.  *See*
*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, C.A. No. 13-1632-LPS, 2017 U.S. Dist.
LEXIS 134551 (D. Del. Aug. 23, 2017) (holding ineligibile claims regarding conversion of a
message from a multimedia message to an e-mail message); *Parus Holdings, Inc. v. Sallie Mae*
*Bank*, 137 F. Supp. 3d 660 (D. Del. 2015) (dismissing as ineligible claims directed to "the
automated tasks of . . . receiving messages via a phone or Internet connection and then
transmitting those messages to a subscriber by phone or Internet."); *Novo*, 2015 U.S. Dist.
LEXIS 116647, at *9-10 (holding that claims relating to converting a message from one media to
another to be directed to the abstract idea of "translation"); *TriPlay, Inc. v. WhatsApp Inc.*, C.A.
No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at *39 (D. Del. Apr. 28, 2015) (recommending
dismissal of claim directed to the abstract idea of "converting and forwarding messages, so that
the messages are sent in a format and layout in which they can be received by a recipient"),
*adopted by* 2015 U.S. Dist. LEXIS 104373 (D. Del. Aug. 10, 2015).  Thus, the fax-to-email
patents are directed to an abstract idea.

> **B.**     **Step Two of Alice: The Fax-to-Email Patents Lack an Inventive**
> **Concept**

Step two of the *Alice* test asks whether the patents include an inventive concept
"sufficient to ensure that the patent in practice amounts to significantly more than a patent upon
the ineligible concept itself."  *Alice*, 134 S. Ct. at 2355 (internal quotation marks, alteration and

citation omitted).  The claims must do more than "[s]imply append[] conventional steps, specified at a high level of generality."  *Id.* at 2357.

Here, representative claim 13 of the '345 patent contains no such inventive concept.  As set forth above, the claim as construed by plaintiff contains only generic, commodity hardware: a general purpose "server" and a fax machine with a keypad for entering a destination address. *See Alice*, 134 S. Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *In re Salwan*, 681 Fed. Appx. 938, 941 (2017) ("the claimed elements of a generic 'network,' 'computer program,' 'central server,' 'device,' and 'server for processing and transferring' are simply not enough to transform the abstract idea into a patent-eligible invention."); *TLI*, 823 F.3d at 615 ("[V]ague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention"); *Content Extraction*, 776 F.3d at 1347-48 (a "generic scanner" is insufficient).  Put differently, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016); *see also TLI*, 823 F.3d at 612. Nothing in the claims "produces 'a result that overrides the routine and conventional' use of [these] known feature[s]."  *Prism Techs. LLC v. T-Mobile USA, Inc.*, C.A. No. 2016-2031, 2017 U.S. App. LEXIS 11163, at *5-8 (Fed. Cir. June 23, 2017).

Beyond those elements, the claim consists merely of the words "to facilitate delivery of facsimile information from said facsimile device to an e-mail address associated with the computer network"—*i.e.*, the abstract idea itself.  *See EasyWeb*, 689 F. App'x at 971 (holding claim lacked inventive concept where "[t]he elements of [the claim] simply recite an abstract

idea or an abstract idea executed using computer technology."). The idea of converting a fax to an e-mail message is not an improvement in computer functionality. As the specification acknowledges, the prior art already disclosed methods for "us[ing] an E-mail system to route a facsimile file" and a "'unified' electronic mailbox" that "integrat[ed] facsimile mail messages." ('345 patent, 1:30-43). Moreover, the claims are not restricted to any particular *way* of converting facsimile messages to e-mail messages, and instead claim the abstract idea as a whole. *See VideoShare*, 2016 U.S. Dist. LEXIS 100860 at *21-30.

The same is true of the other asserted independent claims. Each rephrases the same basic elements, adding, if anything, only conventional steps specified at a high level of generality. *Alice*, 134 S. Ct. at 2357. These steps include, as construed by plaintiff, generating a report that a fax is complete like any conventional fax machine or including instructions (the '906 patent); sending the fax data as an attached file (the '601 patent); or including basic fax machine functionality in addition to fax-to-email functionality (the '888 patent). None of these elements adds anything inventive. *See Ultramercial*, 772 F.3d at 716 ("Adding routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet" is insufficient).

The dependent claims fare no better. Each is either a field-of-use restriction or a conventional step specified at a high level of generality. *See Alice*, 134 S. Ct. at 2357; *Ultramercial*, 772 F.3d at 716 (field-use-of restrictions are "insufficient to save a claim"). For example, the asserted dependent claims of the '906 patent include the steps of putting paper in (claim 2) and entering the address on the keypad (claim 3), the idea of including a generic "alpha-numeric keypad" in the device (claim 16), limitations as to what kinds of networks the device is connected to and how (claims 13, 14, and 15), and a confirmation receipt (claim 10).

None of these elements add an "inventive concept" to render the abstract concept patent eligible. *See FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) (claims requiring a "user interface" lacked an inventive concept); *Affinity Labs*, 838 F.3d at 1261 (claims requiring a customized "user interface" lacked an inventive concept).  Asserted dependent claims 8 and 9 of the '601 patent claim only the use of an alphanumeric keypad, or storing the image data in TIFF format.  Lastly, asserted dependent claims 2-6 of the '888 patent add restrictions about the kinds of networks used, while dependent claim 7 restricts it to the field of multi-function peripherals, and claims 8 and 9 include the previously discussed (and conventional) limitations regarding alphanumeric keyboards and the TIFF format.

## II.     The Address Book Patents Are Ineligible Under 35 U.S.C. § 101

### A.     Step One of Alice: The Address Book Patents Are Directed to an Abstract Idea

Here, the claims of the address book patents are directed, simply, to the idea of an address book.  Or, more specifically, the idea of automating the use of an address book by using a computer.  The concept of an address book is a well-known abstract idea, ubiquitous in business, and the fact that the claims automate the use of the address book with a computer is insufficient to remove them from the realm of abstractness.

#### 1.     The Claims Are Directed to an Address Book

The address book patents are directed to the idea of automating the process of looking up an address in an address book.  The core problem that the patent seeks to solve is that a user knows the fax number of a recipient but may not remember their e-mail or network address.  The claims attempt to solve this problem by storing an address book in a computer so that when a user enters the phone number or other identifier (such as a name), the system can look up the corresponding address and direct the fax there.

16

Every element of every asserted claim is directed towards this process.  For example, element a of representative claim 13 of the '313 patent is "a storage system for storing a plurality of records in a table," where each record contains an identification code identifying the recipient, along with their network address.  Element b is a "processing system" that receives the identification code, matches it to the record, and directs the fax to the network address (*e.g.,* e-mail address, per plaintiff) in the record.  The specification describes elements a and b as being performed by a generic, general purpose personal computer using well-known programming techniques.  (*See, e.g.*, '313 patent, 4:9-16 ("The telephone number table 7 in the local computer 5 is easily generated and maintained using well-known programming techniques."); 4:39-42 ("Upon receiving the telephone number to which the fax should be sent from the fax director 3, the local computer 5 looks up that telephone number in the table 7.  Again, this is done using well-known programming techniques."); 5:6-10 (the e-mail is sent with e-mail software)).  There are no further elements in the claim.  Thus, it is directed to the idea of an address book.

## 2. <u>The Idea of an Address Book is an Abstract Idea</u>

The system as claimed is perfectly analogous to a traditional address book as used in business.  *See Parus*, 137 F. Supp. 3d at 672 ("[T]he fact that there are pre-Internet analogs to the patent claims suggests [that they are directed to] methods of organizing human (business) activity and, therefore, an abstract idea.").  With a paper address book or rolodex, the owner looks up an entry by name, finds the person's telephone number, and calls or sends them a fax. This is a exactly the kind of "'fundamental . . . practice long prevalent in our system of commerce" that constitutes an abstract idea.  *Alice*, 134 S. Ct. at 2356.  All the patentee has done here is automate that practice.  As claimed, a general-purpose computer stores a table of names or other identifiers and their e-mail addresses; when the user wants to send them a message, instead of pulling out their physical address book, they enter the recipient's name or number and

the system looks up the e-mail address in the table and directs the fax there.

Courts evaluating similar abstract ideas have found the patents ineligible. *See, e.g.*, *A Pty Ltd. v. Google, Inc.*, 149 F. Supp. 3d 754 (W.D. Tex. 2016) (holding claims ineligible because they were "most accurately characterized as directed to the abstract idea of an address directory"); *Versata Software, Inc. v. NetBrain Techs., Inc.*, C.A. No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000, at *21 (D. Del. Sep. 30, 2015) (recommending determination of ineligibility for claims involving "creating and displaying the hierarchical representation of data in particular ways, adding various constraints to form a search query, submitting that search query to the database and returning the search results."). The claims are not limited to any specific improvement in how an address book is stored on a computer. Instead, "computers are invoked merely as a tool," using conventional data structures, in order to solve the *human* problem of having to remember a contact's e-mail address. *Cf. Enfish*, 822 F.3d at 1336 (reversing ineligibility determination where the claimed tables were "self-referential," and therefore functioned "differently than conventional database structures"). Thus, representative claim 13 is directed towards an abstract idea under step one of *Alice*.

The other independent claims are directed to the same abstract idea for the same reasons. As discussed above, the other independent claims, including claims 1, 3, and 4 of the '974 patent, contain nearly identical limitations to claim 13 of the '313 patent. The differences are inconsequential: claims 1 and 3 of the '974 patent require that the address book system is "co-located with the sender." ('313 patent, claims 1 and 3). Claim 4 instead requires that the system is "under the management of the sender." (*Id.* at claim 4). Claims 1 and 4 require that the address book stores an "Internet address" rather than a "network address." (*Id.*, claims 1 and 4). None of these changes moves the focus of the claims from the abstract idea of an address book.

18

**B.**     **Step Two of Alice: The Address Book Patents Lack an Inventive Concept**

The claims of the address book patents lack any inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks, alteration and citation omitted). The majority of the language in claim 13 of the '313 patent is dedicated to spelling out the abstract idea itself: a table that stores identification codes and corresponding network addresses (element a), and the act of receiving an identification code and looking up the address (element b). *See Ultramercial*, 772 F.3d at 715 (claim directed to an abstract idea where "the concept embodied by the majority of the limitations describes only the abstract idea"). The only remaining claim limitation is that the system "direct the fax to the network address" if found (element b(3)). However, the specification recognizes that this portion of the claim was performed by, for example, generic e-mail software, for which no details are given. ('313 patent, 5:6-10 ("If . . . a corresponding E-mail address is stored in the table 7, the E-mail software 53 in the local computer 5 generates an E-mail message to the recipient (or no message at all) and delivers that E-mail into the [modem board plugged into the local computer 5] for delivery into the Internet 15 with the computer file attached."). Such generic components are insufficient to supply an inventive concept. *Alice*, 134 S. Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *Affinity Labs*, 838 F.3d at 1265 ("claims that are 'so result-focused, so functional, as to effectively cover any solution to an identified problem' are frequently held ineligible under section 101;" rejecting claim limitations that "describe purely conventional features"); *Content Extraction*, 776 F.3d at 1347-48 (a "generic scanner" is insufficient); *Prism*, U.S. App. LEXIS 11163 at *5-8 (holding that "generic computer hardware running generic computer software" is non-inventive).

Moreover, claim 13 of the '313 patent as asserted by plaintiff would preempt all uses of an address book in this field.  Preemption is the "underlying 'concern that drives the § 101 analysis," and "monopolization of 'the basic tools of scientific and technological work' would 'thwart[] the primary object of the patent laws' to promote future innovation." *Return Mail, Inc. v. United States Postal Serv.*, No. 2016-1502, 2017 U.S. App. LEXIS 16364, at *37-38 (Fed. Cir. Aug. 28, 2017) (citation omitted).  The representative claim is not directed to any particular kind of address book or any improvement in how an address book operates.  It merely describes a generic implementation of an address book in a computer using conventional data structures. Any implementation of an address book within this field—systems that send faxes to a network address—would necessarily be preempted by the claim.

The remaining claims similarly lack any inventive concept.  Independent claims 1, 3, and 4 of the '974 patent add the idea that the system is "co-located with the sender" or "under the management of the sender," which does nothing to save the system from being directed towards the abstract idea of an address book (and a traditional physical address book is likewise "co-located with" or "under the management of" a message sender).  Nor does the limitation that the message is sent to an "Internet address" rather than a "network address" save the claims; plaintiff asserts that both terms are ultimately satisfied by an e-mail address.  (D.I. 1 at ¶¶ 40, 44).  Lastly, the two asserted dependent claims add nothing in this regard; they add only that the identification code is manually entered, and that the claim 4 system is "co-located" like claims 1 and 3.

The claims of the address book patents thus fail to supply an inventive concept that amounts to significantly more than the concept of an address book itself.

## III.    Conclusion

For the foregoing reasons, defendant PNA respectfully requests that the Court dismiss plaintiff's complaint with prejudice.

Respectfully submitted,

| | |
|---|---|
| *Of Counsel:* | /s/ *Adam W. Poff* |
| Joseph Casino, Esq. | Adam W. Poff (No. 3990) |
| Michael J. Kasdan Esq. | Pilar G. Kraman (No. 5199) |
| WIGGIN AND DANA LLC | YOUNG CONAWAY STARGATT |
| 437 Madison Avenue | & TAYLOR, LLP |
| New York, NY 10022 | Rodney Square |
| 212-551-2842 | 1000 North King Street |
| jcasino@wiggin.com | Wilmington, DE 19801 |
| mkasdan@wiggin.com | (302) 571-6600 |
| | apoff@ycst.com |
| | pkraman@ycst.com |

*Attorneys for Defendant Panasonic Corporation of North America*

Dated: October 12, 2017

## <u>CERTIFICATE OF SERVICE</u>

I, Adam W. Poff, Esquire hereby certify that on October 12, 2017, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Timothy Devlin, Esquire
> Devlin Law Firm LLC
> 1306 N. Broom St., 1st Floor
> Wilmington, DE 19806
> *tdevlin@devlinlawfirm.com*
>
> *Attorneys for Plaintiff OpenPrint LLC*

I further certify that on October 12, 2017, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and the following counsel.

> Neal G. Massand
> Hao Ni
> Timothy Wang
> NI, WANG & MASSAND, PLLC
> 8140 Walnut Hill Ln., Suite 310
> Dallas, TX 75231
> nmassand@nilawfirm.com
> hni@nilawfirm.com
> twang@hilawfirm.com

Dated:  October 12, 2017

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
(302) 571-6642
*apoff@ycst.com*

*Attorneys for Defendant Panasonic Corporation of America*