# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OPENPRINT LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 17-1076-GMS |
| | ) |
| PANASONIC CORPORATION OF NORTH AMERICA, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT PANASONIC CORPORATION OF NORTH AMERICA'S REPLY BRIEF IN SUPPORT OF ITS <u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>

*Of Counsel:*
Joseph Casino, Esq.
Michael J. Kasdan Esq.
WIGGIN AND DANA LLC
437 Madison Avenue
New York, NY 10022
212-551-2842
jcasino@wiggin.com
mkasdan@wiggin.com

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendant Panasonic Corporation of North America*

Dated: November 27, 2017

# TABLE OF CONTENTS

**Page**

Argument ..................................................................................................................................1

I. The Fax-to-Email Patents ....................................................................................................1

    A.  Alice Step One .............................................................................................................1

        1. The patents do not claim any "solution" to a technological problem .................1

        2. The claimed server is a conventional computer ...................................................3

    B.  Alice Step Two .............................................................................................................4

    C.  Plaintiff's Proposed Constructions Add Nothing .........................................................5

    D.  The PTO Deserves No Special Deference Here ..........................................................6

II. The Address Book Patents ...................................................................................................7

    A.  Alice Step One .............................................................................................................7

    B.  Alice Step Two .............................................................................................................9

    C.  Plaintiff's Proposed Constructions Add Nothing ...................................................... 10

    D.  The Address Book Patents Preempt the Field........................................................... 10

Conclusion ............................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Affinity Labs of Tex. v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016)..................................................................................3, 6, 8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    143 S. Ct. 2347 (2014)................................................................................................ *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016)..................................................................................1, 2, 3

*Content Extraction and Transmission LLC. Wells Fargo Bank, N.A.,*
    776 F.3d 1343 (Fed. Cir. 2014).......................................................................................5, 6

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014)..................................................................................1, 2, 3

*Garfum.com Corp. v. Reflections by Ruth*
    C.A. No. 14-5919, 2016 U.S. Dist. LEXIS 174134 (D.N.J. Dec. 16, 2016) ...................6, 7

*Genetic Techs. Ltd. v. Merial L.L.C.,*
    818 F.3d 1369 (Fed. Cir. 2016)...........................................................................................9

*In re Salwan,*
    681 Fed. Appx. 938 (Fed. Cir. 2017)............................................................................ 2, 5

*Intellectual Ventures I LLC v. Symantec Corp.,*
    838 F.3d 1307 (Fed. Cir. 2016)......................................................................................4, 9

*Meetrix IP, LLC v. Citrix Sys. et al.,*
    C.A. No. 16-1033 (W.D. Tex., July 27, 2017)..................................................................5

*Pty Ltd. v. Google, Inc.,*
    149 F. Supp. 3d 754 (W.D. Tex. 2016)..............................................................................8

*Sciele Pharma Inc. v. Lupin Ltd.,*
    684 F.3d 1253 (Fed. Cir. 2012).......................................................................................6,7

*Secured Mail Sols., LLC v. Universal Wilde, Inc.,*
    2017 U.S. App. LEXIS 20105 (Fed. Cir. 2017) ........................................................2, 6, 9

*TLI Communs. LLC v. AV Auto., L.L.C.,*
    823 F.3d 607 (Fed. Cir. 2016).......................................................................................2, 5

*TriPlay Inc.v. WhatsApp Inc.,*
    C.A. No. 13-703-LPS, 2015 U.S. Dist. LEXIS 55068 (D. Del. Apr. 28, 2015)...................4

*Two-Way Media Ltd v. Comcast Cable Communs., LLC,* Nos. 2016-2531, 2016-2532,
    2017 U.S. App. LEXIS 21706 (Fed. Cir. Nov. 1, 2017) .................................................4, 6

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014)........................................................................................8

*Versata Software, Inc. v. NetBrain Techs., Inc.,* C.A. No. 13-676-LPS-CJB,
    2015 U.S. Dist. LEXIS 132000 (D. Del. Sep. 30, 2015) ....................................................8

**Statutes**

35 U.S.C. § 101............................................................................................................ *passim*

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)................................................................................................ 1, 4, 6

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
| --- | --- |
| PNA | Panasonic Corporation of North America |
| Plaintiff | OpenPrint LLC |
| The complaint | D.I. 1 |
| The answering brief | D.I. 11 |
| The '345 patent | U.S. Patent No. 6,023,345 |
| The '906 patent | U.S. Patent No. 7,446,906 |
| The '601 patent | U.S. Patent No. 8,547,601 |
| The '313 patent | U.S. Patent No. 6,381,313 |
| The '974 patent | U.S. Patent No. 6,639,974 |
| The '888 patent | U.S. Patent No. 8,941,888 |
| PTO | United States Patent and Trademark Office |
| The fax-to-email patents | The '345, '906, '601, and '888 patents |
| The address book patents | The '313 and '974 patents |

Plaintiff argues that the asserted claims are patent eligible, but its supporting arguments are based on ignoring the claims themselves.  Plaintiff mischaracterizes the central concept of the claims, and then introduces purported inventive concepts that are either restatements of the abstract idea itself or unconnected to the claim and thus irrelevant.  Even under plaintiff's proposed claim constructions, the claims are still not patent eligible, because they do not set forth *how* to accomplish their goal or claim any specific way of doing so.

## ARGUMENT[1]

### I.   The Fax-to-Email Patents

Plaintiff states that the fax-to-email patents solve the alleged prior art problem of "uniting" fax and e-mail systems into one "multi-function system."  But that "problem," and its purported solution, are the same: moving a document from one electronic format (facsimile) to another (e-mail).  The patents claim that abstract idea, as performed by conventional hardware.

#### A.   Alice Step One

##### 1.   The patents do not claim any "solution" to a technological problem

Plaintiff argues that its claims are directed to "a *unitary* multi-function system" that solves the "technological problem" of "*uniting*[] traditionally distinct message delivery systems such as facsimile delivery and electronic mail" and "mingling 'quick and easy facsimile delivery of messages and the popularity of low cost delivery of message[s] via electronic mail.'" (D.I. 11 at 8-9).  But plaintiff's characterization is no less abstract.  In making the argument that the claims simply combine fax and email, plaintiff essentially concedes that the claims are directed to the abstract idea itself: moving a document from one known electronic format (facsimile) to another known electronic format (e-mail), using conventional facsimile and email technologies.

---

[1] PNA notes that this reply brief is substantively the same as the reply brief filed in *OpenPrint LLC v. Oki Data* America, Inc., Case No. 17-cv-01075.

1

Plaintiff seeks refuge under *Amdocs* and *DDR Holdings*, but those cases hold eligible patents that **claim a specific solution** to a prior art problem. *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014). The claims here, however, do not claim a specific solution to the problem of moving a document from a facsimile to an e-mail, because they do not set forth **how** that abstract goal is accomplished—*i.e.*, how the two formats are "united" or how the purported "unitary" system is created. *See Amdocs*, 841 F.3d at 1306 (claims eligible because "they describe a specific, unconventional technological solution, narrowly drawn to withstand preemption concerns, to a technological problem"); *DDR Holdings*, 773 F.3d at 1259 (claims eligible because they "recite a specific way" of accomplishing the abstract idea). Thus, the claims are directed to an abstract idea. *See Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 2017 U.S. App. LEXIS 20105, at *10 (Fed. Cir. 2017) (holding ineligible claims that "are not directed to specific details of the [solution]" and "do not set out how [it] is to be performed.").

Plaintiff also argues that the claims are not abstract because they include "concrete steps" such as the use of a "server" that is on both a phone and a data network to perform the claims. (D.I. 11 at 8-9). But *any* generic fax machine that converts a facsimile message to an e-mail using its computer meets those requirements. The language plaintiff points to boils down to "do it on a server," where the "server" is any generic computer built into a generic fax machine. This is not a specific solution to the identified problem of converting a fax message to an e-mail. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014) ("Stating an abstract idea while adding the words 'apply it with a computer'" is insufficient to render a patent eligible); *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 610-13 (Fed. Cir. 2016) (rejecting claims that included a "server"); *In re Salwan*, 681 Fed. Appx. 938, 941 (Fed. Cir. 2017) (same).

Plaintiff next argues some of the claims require "attaching" the fax to the e-mail, but the specifications recognize that this was a conventional method of sending data at the time, using techniques that were "considered to be well-known to those skilled in the art." ('345 patent, 13:44-49 (emphasis added)); *see also, id.*, 8:17-29, 9:24-38, 13:49-14:14). In sum, none of the claims are directed to a specific solution to a technological problem in the prior art like the claims in *DDR Holdings* and *Amdocs*. Instead, they are directed to the abstract idea itself. *See Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1260-65 (Fed. Cir. 2016).

### 2. The claimed server is a conventional computer

Plaintiff next argues that the claimed server is unconventional, because a conventional server "has no need for a 'fax interface'[] as its purpose is simply to send data via a data network, not a telephony network." (D.I. 11 at 10). But the specifications describe various pre-existing server computer hardware already capable of such connections, "configured and interoperating in a manner that will be clearly understood by one skilled in the art." ('345 patent, 5:52-6:46; *see also id.*, 5:54-6:17 (the server may include a standard "model VFX40ESC voice/fax/modem communication interface available from Dialogic of Parsippany, N.J.," which may be connected to a phone network through a "standard T-1 digital communication link"). The specification recognizes that ordinary servers at the time used "wired and wireless communication interfaces" and "various modems." (*Id.*, 5:38-47).

Moreover, a conventional e-mail server at the time included both a phone modem and a data network interface: "Though deemed unnecessary in light of the relevant skill in the art, the following are given by way of example as acceptable components of the E-mail Server 112: E-mail network interface 200 as a model 1400FXSA *modem* available from Practical Peripherals, Inc. of Thousand Oaks, Calif.; *data network interface 224* as a model SMC9332DST available from Standard Microsystems Corporation of Hauppauge, N.Y. which is compatible with the

3

100BaseT Ethernet Standard and the TCP/IP protocol . . . ." (*Id.*, 7:61-8:2 (emphasis added)). And as set forth above, *any* generic computer that performs the abstract idea in a fax machine would have those elements. Thus, as asserted by plaintiff, the claimed "server" consists of no more than an ordinary computer with software to perform the function set forth in the claims.[2]

B. <u>**Alice Step Two**</u>

To satisfy step two, ***the claims themselves*** must include the alleged inventive concept—language from the specification is not enough. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016) (reversing finding of patent eligibility, and stating that "[t]he district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept"); *see also Two-Way Media Ltd v. Comcast Cable Communs., LLC*, Nos. 2016-2531, 2016-2532, 2017 U.S. App. LEXIS 21706, at *9-20 (Fed. Cir. Nov. 1, 2017) (affirming patent ineligibility because the claims were "missing an inventive concept," although it was "purportedly described in the specification"). While plaintiff relies on figures and quotes from the specification to allege an inventive concept (*see* D.I. 11 at 12-14), it offers no explanation of how those elements are incorporated into the claims, even under the constructions it offers. This is because they are not.

Nor do the "server" or "interface device"—the only elements plaintiff points to that are actually present in the claims or its proposed constructions—supply an inventive concept. As

---

[2] Plaintiff attempts to distinguish PNA's cases on the grounds that its claims are directed to "specific non-generic hardware" and "solving a specific technological problem." (D.I. 11 at 11 n.7). As set forth above, those statements are unsupportable. Moreover, plaintiff misses the point: PNA's cases show that other courts have held ineligible patents directed to similar abstract ideas. For example, in *Triplay*, the Court held ineligible a claim that used a "messaging system" to "convert[]" a message to a new "form" and "facilitate[] delivery of the adapted message to the receiver." *Triplay*, 2015 U.S. Dist. LEXIS 55068 at *6-7. This is analogous to the claims at issue here, which use a "server" to "facilitate delivery of facsimile information . . . to an e-mail address." ('345 patent, claim 13).

4

established above, the server consists solely of conventional computer hardware configured in a conventional manner. Plaintiff asserts that the "interface device" is any "touch screen or key interface" device that allows the user to input "the destination email address to send the internet fax to." (D.I. 1 at ¶ 15). Such keypads and displays were conventional and well known in the prior art. (*See, e.g.,* '345 patent at 20:47-51 (describing that the invention could use an existing keypad on a fax machine), 10:21-23). The "server" and "interface" elements are thus "purely functional and generic" and cannot supply an inventive concept. *Alice*, 134 S. Ct. at 2360; *see Salwan*, 681 Fed. Appx. at 941 ("[T]he claimed elements of a generic 'network,' 'computer program,' 'central server,' 'device,' and 'server for processing and transferring' are simply not enough"); *TLI*, 823 F.3d at 615 ("[V]ague, functional descriptions of server components are insufficient"). They represent nothing more than "well-understood, routine, and conventional activities commonly used in industry." *Content Extraction*, 776 F.3d at 1348.[3]

### C. Plaintiff's Proposed Constructions Add Nothing

Plaintiff offers various proposed constructions that it asserts—without explanation—would render the fax-to-email claims patent eligible:[4]

| Term(s) | Plaintiff's Proposed Construction |
|---|---|
| "facsimile interface device" and "interface device" | "system and/or software capable of user input and facilitating communications between a facsimile device and email server." |
| "facsimile device/machine" | "fax-capable device, capable of sending a facsimile over a PN." |

---

[3] Plaintiff's citation to *Meetrix IP, LLC v. Citrix Sys. et al.*, C.A. No. 16-1033 (W.D. Tex., July 27, 2017) is unhelpful. That case involved a particular "***unconventional*** technological solution" to a "technological problem." *Id.* at 5 (emphasis added). The problem involved "transporting audio and video data together over low bit-rate networks," and the claims were limited to an identified solution of mixing media over hybrid networks. *Id.* Here, the purported technological problem is sending a facsimile to an e-mail address, and the claimed "solution" is the same abstract idea: moving a document from one electronic format (facsimile) to another (e-mail).

[4] Plaintiff's proposed constructions are flawed, but PNA will adopt them for this motion only.

5

| | |
|---|---|
| "facsimile component" | Means-plus function, with corresponding structure: "scanner portion of a facsimile device/machine and its equivalents." |

None of these constructions transform the abstract concepts into patent eligible subject matter. The "interface device" construction is purely functional.[5] The "facsimile device/machine" construction adds only that the generic fax machine can, like any fax machine, send a fax over a phone network. The "facsimile component" construction adds a "scanner," but the claim already calls for that component to "scan[] an image from a hard copy." ('888 patent, 23:36). Such generic hardware cannot supply an inventive concept. *Content Extraction*, 776 F.3d at 1347-48 (rejecting claims that included a "generic scanner"). Plaintiff's constructions fail to render the claims patent eligible. *See Two-Way Media*, 2017 U.S. App. LEXIS 21706 at *13 ("At best, the constructions propose the use of generic computer components to carry out the recited abstract idea, but that is not sufficient [under § 101 and *Alice*].").

### D. The PTO Deserves No Special Deference Here

Finally, plaintiff offers a baseless argument that the Court should defer to the PTO and find the claims patentable merely because the PTO happened to issue one of the patents shortly after the date of the *Alice* decision. (D.I. 11 at 3). But plaintiff offers no evidence that the PTO addressed *Alice* during prosecution, and the Federal Circuit has found ineligible other patents that issued after *Alice*. *See, e.g., Secured Mail*, 2017 U.S. App. LEXIS 20105, at *13 (Fed. Cir. 2017); Exh. A (excerpts of those patents). Plaintiff relies on *Sciele Pharma Inc. v. Lupin Ltd.*, but that opinion does not mention deference in § 101 actions. 684 F.3d 1253, 1259 (Fed Cir.

---

[5] In fact, if anything, the "interface device" construction renders the claim ***more*** abstract, because plaintiff would construe that term to encompass any "software"—rather than hardware—that is "capable of user input and facilitating communications between a facsimile device and email server." *See Affinity Labs*, 838 F.3d at 1258 (holding claim was patent ineligible because there was nothing in the claim that was "directed to *how* to implement" the abstract idea and "the claim [was] drawn to the idea itself.") (emphasis in original).

6

2012).  Plaintiff's further citation to *Garfum.com Corp. v. Reflections by Ruth* is unhelpful, because it referred to the PTO's finding of eligibility only as weighing against an exceptional case finding after the Court's own finding of *ineligibility*.  C.A. No. 14-5919, 2016 U.S. Dist. LEXIS 174134, *11 (D.N.J. Dec. 16, 2016).  Finally, deference to the PTO is the basis of the clear and convincing evidence standard for invalidity, but plaintiff acknowledges that the clear and convincing standard does not apply here.  *Sciele*, 684 F.3d at 1260; (D.I. 11 at 4).  Thus, the Court need give no extraordinary deference to the PTO in this case.

**II.     The Address Book Patents**

    **A.     Alice Step One**

As to the address book patents, plaintiff asserts that the claimed table is not an "address book," but is instead a technical solution to the problem of "Economical Fax Routing."  That is untrue.  Plaintiff repeatedly asserted in its complaint that the accused products infringe because they "stor[e] a plurality of records in *a table* (*i.e.*, *an address book*), each record containing . . . an identification code identifying a recipient that can receive a fax at a network address that is not the identification code (*i.e.*, *an address book entry* associated with the recipient)."  (D.I. 1 at ¶¶ 40, 44 (emphasis added)).  Plaintiff cannot now credibly argue the opposite, that "[a]n address book is not a table."  (D.I. 11 at 17).

Plaintiff's own characterization of the address book patents is the epitome of abstraction: "the invention employs a storage system storing a look-up table containing specifically defined records containing identification codes and corresponding Internet/network addresses to route a fax thru the most economical route based on defined rules."  (D.I. 11 at 4).  The claims do not contain specific rules and plaintiff points to no claim elements that define such rules.  A reference to following a set of undefined, unclaimed rules leaves the asserted claims as no more than a broad abstract idea of somehow using data stored in a table to facilitate the sending of the

7

fax. Every asserted claim, including representative claim 13 of the '313 patent, merely claims matching a recipient's identification code to an associated network or Internet address.

Plaintiff next argues that certain claim language is not directed to an address book, including "directing a fax to a desired recipient identified by [the] identification code" and "a processing system . . . configured to . . . direct the fax to the network address in the matching record if said storage system contains a matching record." (D.I. 11 at 17). But the Federal Circuit has made clear that the Court should look to the claims "[s]tripped of excess verbiage," *Affinity Labs*, 838 F.3d at 1256, and find "the concept embodied by the majority of the limitations," *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). Moreover, those elements simply relate to the *automation* of the use of the address book, set forth in purely functional terms—*i.e.,* to the abstract idea. As asserted, the user selects a name from the screen, and the computer directs the fax to the corresponding address. (*See* D.I. 1 at ¶ 40; *id.*, Exh. M, Fig. 12 (screen for selecting a destination from an address book)). Thus, the claims are directed to "the idea of automating the use of an address book by using a computer." (D.I. 7 at 16).[6]

The cases support a holding that automating the lookup of an address in an address book is an abstract concept. *See A. Pty Ltd. v. Google, Inc.*, 149 F. Supp. 3d 754, 761 (W.D. Tex. 2016) (holding claims ineligible because they "do not have sufficient 'additional features' beyond the abstract idea of an address directory"); *Versata Software, Inc. v. NetBrain Techs., Inc.*, C.A. No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000, at *21 (D. Del. Sep. 30, 2015)

---

[6] The claims do not relate to "Economical Fax Routing." Instead, they involve a *single* corresponding network address for each recipient, and say nothing about any process of selecting a most efficient route. (*See, e.g.,* '313 patent, claim 13). And regardless, even if they did, that idea is no less abstract and no less well known. For example, people have historically chosen to make calls at night or on weekends to avoid phone charges, to take a longer route to avoid toll roads, or to ship packages via the postal service rather than a private carrier to avoid fees.

8

(holding ineligible claims directed to "the concept of representing information in a hierarchy").

### B. Alice Step Two

Plaintiff argues that the "table" set forth in the claims constitutes an inventive concept. But that table is the abstract idea itself—the address book—and thus cannot serve as an inventive concept. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1376 (Fed. Cir. 2016) ("The inventive concept necessary at step two of the *Mayo/Alice* analysis **cannot be furnished by the . . . abstract idea[] itself**." (emphasis added)). Moreover, the specifics of the table are not claimed. As asserted by plaintiff, all that is claimed is a table with an identification code and a network address, where the two are different, and that the system uses that table to direct the fax to the address. (*See* '313 patent, claim 13). This is the abstract idea itself, including both the address book and automating its use. *See Alice Corp.*, 134 S. Ct. at 2355 (the inventive concept must be "sufficient to ensure that the patent in practice amounts to significantly **more than** a patent upon the ineligible concept itself." (emphasis added; alterations and citation omitted)).

Plaintiff next argues that the "identification code" and "network address" render the table "unique" and therefore inventive. (D.I. 11 at 18). But, as asserted, entering the identification code is performed by selecting a name from a touch screen, and the "network address" is an e-mail address. (D.I. 1 at ¶ 40; *id.*, Exh. M, Fig. 12). Thus, like in *Secured Mail*, "[t]he claim language does not provide any specific showing of what is inventive about the identifier or about the technology used to generate and process it." 2017 U.S. App. LEXIS 20105, at *11. Both elements correspond to an address book, and therefore cannot supply an inventive concept. *Genetic Techs.*, 818 F.3d at 1376.

Finally, plaintiff points to the "fax converter" and "fax director" as alleged inventive concepts, but those elements are absent from both the claims and plaintiff's constructions. (D.I. 11 at 19). As noted above, plaintiff cannot rely solely on the specification to supply an inventive

concept when the claims do not. *Intellectual Ventures I*, 838 F.3d at 1322.

### C. Plaintiff's Proposed Constructions Add Nothing

Once again, plaintiff offers various proposed constructions:[7]

| Term(s) | Plaintiff's Proposed Construction |
|---|---|
| "identification code" | "identifier in a record correlating to an Internet/network address, e.g. a telephone number" |
| "matching record" | "record in a look-up table corresponding to an identification code" |
| "direct the fax to the network/Internet address" | "convert the fax to a computer file and sending the file via FTP through a fax sender or E-mail though a fax sender" |

None of plaintiff's constructions transform the abstract concepts into patent eligible subject matter. Each merely incorporates various elements that are already in the claims, at least as those claims have been asserted by plaintiff in the complaint. As set forth above, courts have found that generic words used by plaintiff in its constructions—like "identifier," "record," or "converting" and "sending"—cannot supply a sufficient inventive concept.

### D. The Address Book Patents Preempt the Field

Plaintiff argues that there is no preemption here because a fax machine could require a user to enter the destination network address itself, rather than choosing a name from a list and storing the corresponding network address. (D.I. 11 at 20). But this boils down to an argument that fax machines are not preempted if they do not use address books. This concedes that devices that *do* practice the abstract idea (*i.e.*, that include address books) *are* preempted.

### CONCLUSION

For the foregoing reasons, defendant PNA respectfully requests that the Court dismiss plaintiff's complaint with prejudice.

---

[7] Plaintiff seeks to rely on "extrinsic support such as inventor testimony, expert declarations or dictionaries" to establish its constructions. (D.I. 11 at 19). However, PNA will assume that plaintiff's constructions are correct for the purposes of this motion without burdening the Court.

Respectfully submitted,

*Of Counsel:*

Joseph Casino, Esq.
Michael J. Kasdan Esq.
WIGGIN AND DANA LLC
437 Madison Avenue
New York, NY 10022
212-551-2842
jcasino@wiggin.com
mkasdan@wiggin.com

Dated: November 27, 2017

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendant Panasonic Corporation of North America*

## **CERTIFICATE OF SERVICE**

I, Adam W. Poff, Esquire hereby certify that on November 27, 2017, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Timothy Devlin, Esquire
>Devlin Law Firm LLC
>1306 N. Broom St., 1st Floor
>Wilmington, DE 19806
>*tdevlin@devlinlawfirm.com*
>
>*Attorneys for Plaintiff OpenPrint LLC*

I further certify that on November 27, 2017, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and the following counsel.

>Neal G. Massand
>Hao Ni
>Timothy Wang
>NI, WANG & MASSAND, PLLC
>8140 Walnut Hill Ln., Suite 310
>Dallas, TX 75231
>nmassand@nilawfirm.com
>hni@nilawfirm.com
>twang@hilawfirm.com

Dated:   November 27, 2017

>YOUNG CONAWAY STARGATT &
>  TAYLOR, LLP
>
>*/s/  Adam W. Poff*
>Adam W. Poff (No. 3990)
>Rodney Square
>1000 N. King Street
>Wilmington, Delaware 19801
>(302) 571-6642
>*apoff@ycst.com*
>
>*Attorneys for Defendant Panasonic*
>*Corporation of America*

01:22448159.1